**LAKESHORE LAW CENTER**
**Jeffrey Wilens, Esq. (State Bar No. 120371)**
**18340 Yorba Linda Blvd., Suite 107-610**
**Yorba Linda, CA 92886**
**714-854-7205**
**714-854-7206 (fax)**
**jeff@lakeshorelaw.org**

**THE SPENCER LAW FIRM**
**Jeffrey P. Spencer, Esq. (State Bar No. 182440)**
**903 Calle Amanecer, Suite 220**
**San Clemente, CA 92673**
**949-240-8595**
**949-240-8515 (fax)**
**jps@spencerlaw.net**

**Attorneys for Plaintiffs**

### UNITED STATES DISTRICT COURT,

### NORTHERN DISTRICT OF CALIFORNIA,

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DINAH PHAM, et. al. | ) Case No. CV-13-04209 CRB |
| | ) Complaint filed October 22, 2012 |
| | ) Trial Date: |
| | ) Pre-Trial Date: |
| Plaintiff, | ) Discovery Cut-Off: |
| | ) |
| v. | ) **Class Action** |
| | ) |
| JP MORGAN CHASE BANK, | ) **PLAINTIFFS' MOTION TO** |
| N.A., et. al., | ) **REMAND TO STATE COURT,** |
| | ) **REQUEST FOR ATTORNEY'S** |
| | ) **FEES, POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT** |
| | ) **THEREOF** |
| | ) Hearing Date: November 8, 2013 10am |
| | ) Department 6 |
| Defendants. | ) Hon. Charles R. Breyer, Judge |

**TO EACH PARTY AND THEIR ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that on the 8th day of November 2013, at the hour of 10:00 a.m. or as soon thereafter as counsel may be heard in Department 6 of the United States District Court, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will move pursuant to 28 U.S.C. § 1447 (c) for an order remanding the above entitled case to the state court. Said motion will be made upon the grounds that there is no federal jurisdiction.

Plaintiffs further request that the court order Defendants PartnerWeekly, LLC and TSS Acquisition Company, LLC, and Defendant Rare Moon Media, LLC, to pay Plaintiffs their "just costs and any actual expenses, including attorney fees, incurred as a result of the removal. . . ." (28 U.S.C.A. §1447 (c).) Plaintiffs have submitted a declaration seeking fees and costs in excess of $6,000.00, but limit the request to that amount.

Said motion will be made on the grounds set forth in the accompanying memorandum of law. This motion will be based upon this notice, the points and authorities set forth below, the attached declaration(s), any separate statement filed herewith, and the complete files and records in this action.

DATED: October 3, 2013

Respectfully submitted,

By  _/s/_Jeffrey Wilens_____

**JEFFREY WILENS**
**Attorney for Plaintiffs**

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.   Whether this action must be remanded to state court because the Edge Act does not apply?

2.   Whether this action must be remanded to state court because the amount in controversy does not exceed $5,000,000?

## <u>STATEMENT OF CASE</u>

This is the second time this lawsuit has been removed from Superior Court.  The lawsuit was filed on October 22, 2012.   The First Amended Complaint was filed November 2, 2013.  On December 31, 2012, Defendant MoneyMutual, LLC removed the case.  The only ground cited for that removal was pursuant to 28 U.S.C. § 1332 (d) (CAFA),which imposes various requirements including that "the amount in controversy exceeds the sum or value of $5,000,000, exclusive of costs and interests."  On April 10, 2013, Judge White granted the motion to remand.  (Wilens Declaration, ¶ 2, Exhibit 1.)

This second removal attempt, filed on September 11, 2013, asserts jurisdiction under the Edge Act.  The two removing defendants are joined by Defendant Rare Moon Media, LLC which reasserts the same CAFA ground already rejected by Judge White.

This is a putative class action against numerous Defendants that fall into three groups.  The first group is JPMorgan Chase Bank and Wells Fargo Bank.  After the case was remanded to state court the first time, both banks successfully moved to compel arbitration of all claims against them.  The order compelling arbitration was filed July 30, 2013.  All claims against the banks are currently proceeding before the American Arbitration Association.  (Wilens Declaration, ¶ 3, Exhibit 2.)  Therefore, while the banks nominally remain parties, the Superior Court (and now in this Court) would have no jurisdiction to adjudicate any claims against the banks or to award any damages or to

1

1   grant any other relief.

2       The second group is MoneyMutual, LLC and various "sister" or "parent"

3   companies including PartnerWeekly, LLC and TSS Acquisition Company, LLC.  These

4   last two defendants were added as Doe Defendants after the case was remanded to state

5   court the first time.  All of the members of this group operate the payday lending website

6   at www.moneymutual.com.

7

8       The third group consists of various Offshore Payday Lenders identified as Cash

9   Yes, Gateway Holdings Group, LLC, Horizon Opportunities Group, SCS Processing,

10  LLC, Payday Valet and VIP PDL Services, LLC.  (First Amended Complaint[1], ¶¶ 25, 59,

11  83.)  They have not yet been served or appeared.

12      The First Amended Complaint alleges that Plaintiffs and Class Members obtained

13  payday loans through the Money Mutual website.  The loans were brokered by the

14  Money Mutual Defendants, based in Nevada, and were actually provided by the Offshore

15  Lenders, which are based in the West Indies, Belize and the Isle of Man.  None of the

16  lenders were licensed in California to make such loans and the loans did not comply

17  with the finance charge cap and other requirements of California law.  The loans were

18  illegal and the Plaintiffs and Class Members are entitled to full restitution and

19  cancellation of the debt.  (FAC, ¶¶ 38, 54-57, 60, 70-71, 78-81.)

20      The Money Mutual Defendants solicit California residents to obtain payday loans

21  through the website and other advertising which falsely claims that the lenders affiliated

22  with MoneyMutual comply with all applicable state and federal laws and have been

23  screened for compliance.  The website contains numerous testimonials from television

24

25

26

27  ---

[1]The FAC is attached to Doc. 1, Notice of Removal, as Exhibit A.

28

2

celebrity Montel Williams who is also the pitchman for Money Mutual on television, radio and the Internet.  Notwithstanding these assurances, many if not most of the lenders referred to consumers by Money Mutual are illegal and therefore do not comply with state law.  (FAC, ¶¶ 62-68, 70.)

The Bank Defendants were aware that the Offshore Lenders were operating illegally but nevertheless electronically transferred money from Plaintiffs and the Class Members' bank accounts and sent that money to the Offshore Lenders.  (FAC, ¶¶ 85-93.)

There are seven causes of action:

1.  Violation of California's Deferred Deposit Transaction Law (payday loan law) by the Offshore Lenders.

2.  Aiding and Abetting Violation of the DDTL by the Money Mutual Defendants.

3.  Aiding and Abetting Violation of the DDTL by the Bank Defendants, now being arbitrated.

4.  Violation of the Unfair Competition Law—unlawful business practices—against all Defendants, now being arbitrated as to the Bank Defendants.

5.  Violation of the Unfair Competition Law—fraud and deceit—against the Money Mutual Defendants.

6.  Violation of the Unfair Competition Law—unlawful or unfair business practices— against the Bank Defendants, now being arbitrated.

7.  Negligence against the Bank Defendants, now being arbitrated.

The only information provided about the amount in controversy is as follows. Plaintiff Bernal paid approximately $1,310 on several illegal loans, Pham paid approximately $6,422 on numerous loans, and Bailey $650 on one loan.  (FAC, ¶¶ 39-46.)  There are at least 1,000 Class Members.   (FAC, ¶ 19.)  Pursuant to Financial Code

3

§ 23064, Plaintiffs and Class Members can recover treble damages on actual losses and can cancel any unpaid debt based on the illegal loans, and the court has discretion to award punitive damages.  The same section also allows Plaintiffs to recover attorney's fees.

## POINTS AND AUTHORITIES

## ARGUMENT

**I.   THE CASE MUST BE REMANDED BECAUSE THE EDGE ACT DOES NOT APPLY TO THIS LAWSUIT SINCE THERE IS NO LONGER A PARTY ORGANIZED UNDER THE LAWS OF THE UNITED STATES.**

PartnerWeekly and TSS Acquisition removed pursuant to the Edge Act, 12 U.S.C. § 632:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any **corporation organized under the laws of the United States shall be a party**, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, **shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits**; and **any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States** for the proper district by following the procedure for the removal of causes otherwise provided by law. . . . . (emphasis added)

Thus, jurisdiction under the Edge Act requires a) a civil action; b) a United States corporation is a party; c) the lawsuit must arise out of international banking transactions or international financial operations.  (Retailers Nat. Bank v. Harding

(N.D. Cal., June 30, 2006, C-03-4190CW) 2006 WL 6181282, *2 quoting Pinto v. Bank One Corp. (S.D.N.Y. June 4, 2003) 2003 WL 21297300, at *2.)  The second requirement is not met.

The burden of establishing federal jurisdiction is upon the party seeking removal, and the Edge Act removal statute is strictly construed against removal jurisdiction. (Retailers Nat. Bank, supra, 2006 WL 6181282 at p. *2.)  Moreover, grounds for federal jurisdiction must exist at the time of removal.  (Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc. (9th Cir. 1998) 159 F.3d 1209, 1211.)  Thus in City of Stockton v. Bank of America, N.A. (N.D. Cal. 2008) 2008 WL 4911183, *1, n. 1, the district court evaluated Edge Act jurisdiction based on the parties existing at the time of the removal and disregard the plaintiff's post-removal dismissal of foreign banks.    We have essentially the reverse situation, where the banks were effectively dismissed from the court proceedings before the removal was filed.

Having successfully moved to compel arbitration long before the second removal notice was filed, the Bank defendants are at this point only nominally parties to this lawsuit.   In Bata v. Central-Penn Nat. Bank of Philadelphia (E.D. Pa. 1963) 223 F.Supp. 91, 94, the court held that to be a "party" within the meaning of the Edge Act, the bank or other corporation organized under federal law must be exposed to personal liability. In that case, the national bank was a named party at the time of removal, but served only as an escrow agent and stakeholder between the individual plaintiff and the individual defendant.  The court gave the following reasons for treating the bank as a non-party for purposes of Edge Act jurisdiction:

> The bank in the present case has no interest in the outcome of the suit. Indeed, at the trial of the case its counsel's only problem will be to decide at which table to sit. The decision

> on the merits will be binding upon the real parties in interest, not affecting the bank's position. We cannot hold that Congress intended to enlarge the closely guarded jurisdiction of federal courts to bring within it the present controversy simply because of the tenuous connection of Central-Penn with the present suit. (Id. at p. 94.)

The court distinguished the factual scenario in Bata from that in Travis v. National City Bank of New York (E.D.N.Y. 1938) 23 F.Supp. 363, "where a successful suit would have imposed a liability upon the bank itself which would have had to be met out of the bank's own assets." (Bata, supra, 223 F.Supp. at p. 94; see also Corporacion Venezolana de Fomento v. Vintero Sales Corp. (S.D.N.Y. 1979) 477 F.Supp. 615, 621-22 (mere stakeholders not subject to liability are not real parties to the action and their presence does not provide a basis for jurisdiction under the Edge Act); But cf., Grace v. Corporation of Lloyd's (S.D.N.Y. 1997) 1997 WL 607543, *4 (Edge Act jurisdiction proper because bank defendants were exposed to financial loss in the court proceedings).)

The same reasoning applies in the instant case. When and if this lawsuit proceeds to trial, not only will the two banks have no interest in the outcome but they will not even be attending the trial. The decision on the merits will be binding on Plaintiffs and the other Defendants, but will not be binding on Chase Bank and Wells Fargo Bank. Instead, one or more arbitrators will determine the question of liability and damages as to the two banks. The arbitrators will also decide what other relief, including an injunction, is available and appropriate.

While any party can remove under the Edge Act and not just the national bank, it is still noteworthy that MoneyMutual related entities that have removed this case for the second time. The Banks have not joined in removal and therefore presumably agree

they have no interest in the outcome of this litigation.  A national bank does not need a federal forum when it has chosen the forum of  private arbitration instead.  No purpose would be served by allowing non-bank parties to invoke the Edge Act when the only national bank parties are already in binding arbitration.

There is no federal jurisdiction under the Edge Act.

## II. THE CASE SHOULD BE REMANDED SINCE DEFENDANTS HAVE NOT PROVEN THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000.

Under the Class Action Fairness Act (CAFA), and specifically pursuant to 28 U.S.C. § 1332 (d), the district court has original jurisdiction over state law class actions where various requirements are met, including that "the amount in controversy exceeds the sum or value of $5,000,000, exclusive of costs and interests."  Whether the other requirements are met is not addressed in this motion because the minimum jurisdictional amount requirement (over $5 million) is not met.

Where a plaintiff's state court complaint does not specify a particular amount of damages, as is the case here, the removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5 million.  (Abrego Abrego v. The Dow Chemical Co. (9th Cir. 2006) 443 F.3d 676, 683; Sanchez v. Monumental Life Ins. Co. (9th Cir. 1996) 102 F.3d 398,404.)  Defendants must meet this burden with admissible "summary-judgment" type evidence, which can include declarations, but can also rely on "judicial admissions" facially apparent from allegations in the complaint.  (Singer v. State Farm Mut. Auto. Ins. Co. (9th Cir. 1997) 116 F.3d 373, 377;  Valdez v. Allstate Ins. Co. (9th Cir. 2004) 372 F.3d 1115, 1117.)  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  (Lewis v. Verizon Communications,

7

Inc. (9th Cir. 2010) 627 F.3d 395, 400.)  However, removal jurisdiction cannot be based on "speculation and conjecture." (Trang v. Turbine Engine Components Technologies Corp. (C.D. Cal., Dec. 19, 2012, CV 12-07658 DDP RZX) 2012 WL 6618854, *7.)  "While it is conceivable that the amount in controversy exceeds $5,000,000, the removal statute is strictly construed against removal jurisdiction when the court has some remaining doubt whether the amount in controversy has been met."  (Id.)  "Guided by the principle that all doubts are to be resolved in favor of remand, the Court finds that Defendant has not met its burden in proving the requisite amount in controversy." (Watkins v. Vital Pharmaceuticals, Inc. (C.D. Cal., Nov. 26, 2012, CV 12-09374 SJO JCX) 2012 WL 5902362, *3.)

As alluded to previously, Judge White already considered and rejected the argument that the amount in controversy exceeds $5,000,000.  As discussed in his ruling, that removing defendant had simply averaged the losses suffered by the named plaintiffs according to the complaint, trebled the total as permitted by law, and then multiplied that by the estimated 1,000 class members.  "Defendants then use[d] this number as a starting point to calculate punitive damages and attorneys' fees, which are also added to the amount in controversy."  (Exhibit 1, p. 5:1-6.)  Judge White concluded "such  a calculation, which extrapolates from three class representatives to an entire class is unsupported by underlying facts, is speculative, and falls short of meeting the preponderance of the evidence burden."  (Exhibit 1, p. 5:6-8.)

Now, Rare Moon Media joins in this removal and reasserts the same CAFA argument with a slight twist that makes no difference.  To address the foregoing ruling, Rare Moon Media adds a fact that must have been obvious and already known to Judge White—namely that Chase and Wells Fargo Banks each have a net worth in the many

billions of dollars.  Accordingly, even a punitive damages award of much less than 1% would be more than $5 million dollars.

The problem is that punitive damages cannot be awarded in a vacuum.  They must bear some reasonable relationship to the compensatory damages.  (BMW of North America, Inc. v. Gore (1996) 517 U.S. 559, 580; Simon v. San Paolo U.S. Holding Co., Inc. (2005) 35 Cal.4th 1159, 1172.)   At least MoneyMutual, in the former removal attempt, made some argument that compensatory damages could be over $1 million although Judge White properly rejected this extrapolation based argument as too speculative.  Rare Moon Media presents no evidence that would allow this Court to calculate the potential amount in controversy as to compensatory damages.  The only "fact" it offers is the net worth of the banks which shows only that assuming a sufficiently large amount of compensatory damages is in controversy, the punitive damages could exceed $5 million.  There is no reason for this Court to deviate from the prior ruling.

This action must be remanded to state court as Defendant Rare Moon Media has failed to meet its burden of establishing the amount in controversy exceeded $5 million.

## II.   ATTORNEY'S FEES SHOULD BE AWARDED.

The court has discretion under 28 U.S.C. § 1447 (c) to require Defendants to pay Plaintiffs' costs, including attorney's fees, in opposing the removal to federal court.  The award of attorney's fees and costs is not contingent upon the removal being in bad faith or frivolous. (Moore v. Permanent Medical Group, Inc. (9th Cir. 1992) 981 F.2d 443, 446.) This court has discretion to award fees even "when a defendant's removal, while 'fairly supportable,' was wrong as a matter of law."  (Balcorta v. Twentieth Century-Fox Film Corp. (9th Cir. 2000) 208 F.3d 1102, 1106 n. 6.)  "Just costs" include court costs

and attorney's fees, regardless of whether Plaintiff has in fact paid such fees (e.g., where case is being handled on a contingency fee or pro bono basis).   (<u>Gotro</u> v. <u>R</u> & <u>B</u> <u>Realty</u> <u>Group</u> (9th Cir. 1995) 69 F.3d 1485, 1488.)   Plaintiffs' counsel has submitted a declaration establishing "just costs" related to Defendant's improper removal to federal court will exceed $6,000.  (Wilens Declaration, ¶¶ 6-7.)

Costs should be awarded here.  Defendant's removal was not supported by case law from the Ninth Circuit.   As to the removal by PartnerWeekly, LLC and TSS Acquisition Company, this is the same defense counsel that removed the case once before.   The Notice of Removal <u>conceals</u> the fact that the two banks already moved to compel arbitration and for all intents and purposes are no longer parties to the litigation.   (Doc. 1, p. 4, ¶ 9.)   That fact should have been disclosed to the Court. Moreover, the case was removed on September 11, 2013.  On September 12, 2013, the Alameda County Superior Court was set to rule on Plaintiffs' motions to compel further discovery responses from MoneyMutual.  Instead the motion was taken off calendar. (Wilens Declaration, ¶ 4.)

As for Rare Moon Media, Plaintiff's counsel spoke to their counsel on September 30, 2013 and alerted him that the case had already been remanded based on the same CAFA argument.  Defense counsel stated he was aware of this but Defendant would continue to assert its argument for removal.  When specifically asked how any punitive damages could be awarded without evidence of compensatory damages, he had no answer.  (Wilens Declaration, ¶ 5.)

## **CONCLUSION**

For the above stated reasons, Plaintiffs respectfully urge the court to grant the motion to remand to the Alameda County Superior Court.

DATED: October 3, 2013

Respectfully submitted,

By      _/s/_Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Plaintiffs

# __DECLARATION OF JEFFREY WILENS__

I, JEFFREY WILENS, hereby declare:

1.  I am an attorney of record for plaintiff in this matter.  I could and would competently testify to the below stated facts of my own personal knowledge if called as a witness.

2.  This is the second time this lawsuit has been removed from Superior Court.  The lawsuit was filed on October 22, 2012.  The First Amended Complaint was filed November 2, 2013.  On December 31, 2012, Defendant MoneyMutual, LLC removed the case.  The only ground cited for that removal was pursuant to 28 U.S.C. § 1332 (d) (CAFA),which imposes various requirements including that "the amount in controversy exceeds the sum or value of $5,000,000, exclusive of costs and interests."  On April 10, 2013, Judge White granted the motion to remand.   A true and correct copy of Judge White's order is attached hereto as Exhibit 1 and incorporated thereby.

3.  After the case was remanded to state court the first time, JPMorgan Chase Bank and Wells Fargo Bank successfully moved to compel arbitration of all claims against them.  The order compelling arbitration was filed July 30, 2013.  A true and correct copy of the order compelling arbitration is attached hereto as Exhibit 2 and incorporated thereby. All claims against the banks are currently proceeding before the American Arbitration Association.

4.  Costs should be awarded here.  Defendant's removal was not supported by case law from the Ninth Circuit.    As to the removal by PartnerWeekly, LLC and TSS Acquisition Company, this is the same defense counsel that removed the case once before.   The Notice of Removal <u>conceals</u> the fact that the two banks already moved to compel arbitration and for all intents and purposes are no longer parties to the

litigation.   (Doc. 1, p. 4, ¶ 9.)   That fact should have been disclosed to the Court. Moreover, the case was removed on September 11, 2013.  On September 12, 2013, the Alameda County Superior Court was set to rule on Plaintiffs' motions to compel further discovery responses from MoneyMutual.  Instead the motion was taken off calendar.

5.      As for Rare Moon Media, I spoke to their counsel on September 30, 2013 and alerted him that the case had already been remanded based on the same CAFA argument.   Defense counsel stated he was aware of this but Defendant would continue to assert its argument for removal.   When I specifically asked how any punitive damages could be awarded without evidence of compensatory damages, he had no answer.

6.  As a result of Defendant's removal of the state court action to federal court, Plaintiffs have incurred and will incur reasonable expenses and attorney's fees in connection with this motion and the hearing thereon, totaling more than 10 hours at $600 per hour = $6,000 consisting of the following:   Review of Notice of Removal and Supporting Documents  (one hour); Preparation of Motion to Remand (six hours); Review Opposition(s), prepare any Reply (four hours); Court Appearance in San Francisco from Orange County (four hours).

7.  I have been a member of the California State Bar, without interruption, since December 1985.   My normal hourly billing rate for complex civil litigation or consumer litigation on a contingency fee basis is $650 per hour and I have been awarded attorney's fees at that $600 per hour in complex litigation.  On October 11, 2012, the Honorable Steven A. Brick granted final approval to a class action settlement in which I had been appointed class counsel in Hamilton v. Vitamin

World, Inc., Alameda County Superior Court case no. RG10524008 and awarded me attorney's fees at the hourly rate of $600 per hour, which he found within the range of hourly fees reasonably and normally charged by attorneys with comparable experience.   On October 5, 2011, the Honorable Kim G. Dunning granted final approval to a class action settlement in which I had been appointed class counsel in Lavergne v. Evergreen Royalle, LLC, Orange County Superior Court Case No. 30-2008-00212468 and awarded me fees at the hourly rate of $600 based on similar findings.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Executed on October 3, 2013, at Yorba Linda, California.

By     ___/s/ Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Plaintiffs

United States District Court

For the Northern District of California

1

2

3

4

5

6     IN THE UNITED STATES DISTRICT COURT

7

8     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  DINAH PHAM, PAULA BERNAL, MARY F.
BAILEY, on their behalf and on behalf of

10  those similarly situated,           No. C 12-06579 JSW

11        Plaintiffs,

12  v.                   **ORDER GRANTING
PLAINTIFFS' MOTION TO**

13  JPMORGAN CHASE BANK, N.A., et al.    **REMAND AND DENYING
PLAINTIFFS' REQUEST FOR**

14        Defendants.            **ATTORNEYS' FEES**

15

16  _____/

17      Now before the Court is the motion to remand the action to state court filed by Plaintiffs

18  Dinah Pham, Paula Bernal, and Mary F. Bailey on behalf of themselves and a class of similarly

19  situated persons (collectively "Plaintiffs"). The Court finds this matter is appropriate for

20  disposition without oral argument and it is hereby deemed submitted. *See* N.D. Civ. L.R. 7-

21  1(b). Accordingly, the hearing set for April 26, 2013 is HEREBY VACATED. Having

22  carefully considered the parties' arguments and the relevant legal authority, the Court hereby

23  GRANTS Plaintiffs' motion.

24                  **BACKGROUND**

25      On October 22, 2012, Plaintiffs filed a putative class action against JPMorgan Chase

26  Bank, Wells Fargo Bank ("Bank Defendants"), Money Mutual, Effective Marketing Solutions,

27  Aaron Shoaf, Montel Williams ("Money Mutual Defendants"), Cash Yes, Gateway Holdings

28  Group, LLC, Horizon Opportunities Group, SCS Processing, LLC, Payday Valet, and VIP PDL

EXHIBIT 1:  ORDER REMANDING CASE

Services, LLC ("Offshore Lender Defendants") (collectively "Defendants"). (First Amended Complaint ("FAC") ¶¶ 1-17.) Plaintiffs allege that the Offshore Lender Defendants, based primarily in the Caribbean or Central America, and unlicensed by the state of California, entered into illegal deferred deposit transactions (colloquially "payday loans") with the Plaintiffs. (*Id.* ¶¶ 19, 34-38.) Plaintiffs also allege that Money Mutual, a payday lender referral service, brokered some of these loans. (*Id.* ¶¶ 59-78.) Plaintiffs further allege that the Bank Defendants withdrew money from the Plaintiffs' checking accounts and electronically transmitted it to bank accounts belonging to the Offshore Lender Defendants. (*Id.* ¶¶ 83-89.)

Based on these allegations, Plaintiffs bring claims against Defendants for violations of the California Deferred Deposit Transaction Law ("CDDTL"), aiding and abetting violations of the CDDTL, violations of California's Unfair Competition Law ("UCL"), and negligence. (*Id.* ¶¶ 24-133.) Plaintiffs seek relief in the form of compensatory damages, cancellation of unpaid debt, punitive damages, attorney fees, a declaratory judgment, and injunctive relief. (FAC, Prayer for Relief ¶¶ 1-13.)

On December 31, 2012, Defendants filed a notice of removal pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. (Notice of Removal ¶¶ 4-12.) Specifically, Defendants argue that this case fulfills the requirements of the Class Action Fairness Act of 2005, which grants federal district courts original jurisdiction over certain class action suits. (*Id.* ¶ 4.)

**ANALYSIS**

**A.      Request for Judicial Notice.**

Defendants request that this Court take judicial notice of two documents filed in *Paula Bernal, et al. v. Southwestern & Pacific Finance, Inc. DBA Check 'N Go, et al.*, Case No. CV12-05797-SBA, a case pending in the Northern District of California: (1) Notice of Removal of Defendant Southwestern & Pacific Specialty Finance, Inc., filed November 13, 2012; and (2) Joint Case Management Statement, filed February 1, 2013. (Request for Judicial Notice ("RJN"), Exs. A, B.)

Plaintiffs do not dispute the accuracy of the documents attached to Defendants' request, and the documents are of the type which this Court may properly take judicial notice. *See Lee*

2

EXHIBIT 1:  ORDER REMANDING CASE

United States District Court

For the Northern District of California

*v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) ("a court may take judicial notice of 'matters of public record'"). Accordingly, the Court takes judicial notice of the documents attached to Defendants' request.

**B.    Legal Standards Relevant to Removal Jurisdiction.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). District Courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1).

The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is construed strictly against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. In order to determine whether the removing party has met its burden, a court may consider the contents of the removal petition and "summary-judgment-type evidence." *Valdez*, 372 F.3d at 1117.

The Class Action Fairness Act ("CAFA") provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds $5,000,000, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5).

EXHIBIT 1:  ORDER REMANDING CASE

1    **C.    Motion to Remand.**

2        **1.    Burden of Proof.**

3        As a threshold matter, the Court must determine the appropriate burden of proof.  The

4    Ninth Circuit has "identified at least three different burdens of proof which might be placed on

5    a removing defendant in varying circumstances."  *Guglielmino v. McKee Foods, Inc.,* 506 F.3d

6    696, 699 (9th Cir. 2007).  When a plaintiff has filed a complaint in state court that shows "on its

7    face an amount in controversy sufficient to meet the federal jurisdictional threshold, such

8    requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff

9    cannot actually recover that amount."  *Id.* (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d

10   398, 402 (9th Cir. 1996)).  If it is "unclear or ambiguous from the face of a state-court

11   complaint whether the requisite amount in controversy is pled[,] ... a preponderance of the

12   evidence standard" applies.  *Id.* (citing *Sanchez*, 102 F.3d at 404).  Finally, if "a state-court

13   complaint affirmatively alleges that the mount in controversy is less than the jurisdictional

14   threshold, the 'party seeking removal must prove with legal certainty that [CAFA's]

15   jurisdictional amount is met.'"  *Id.* (quoting *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d

16   994, 1000 (9th Cir. 2007)).

17   **D.    Plaintiffs' Motion to Remand.**

18       For purposes of removal under CAFA, the parties do not dispute minimal diversity or

19   that the class comprises at least 100 persons.  Thus, the amount in controversy, which must

20   exceed $5,000,000, is the only statutory requirement at issue here.

21       **1.    Defendants Fail to Demonstrate that the Amount in Controversy is**

22           **Satisfied.**

23       Plaintiffs do not allege an amount in controversy in their complaint, and thus the

24   Defendants bear the burden of showing by a preponderance of the evidence that the amount in

25   controversy exceeds $5,000,000.  *See Lowdermilk*, 479 F.3d at 997 (reserving the

26   preponderance of the evidence standard only for those situations where the plaintiff does not

27   seek a specific amount in damages).

28
                                            4

**United States District Court**
For the Northern District of California

EXHIBIT 1:  ORDER REMANDING CASE

United States District Court

For the Northern District of California

1    Here, to demonstrate the amount in controversy, Defendants average the trebled

2    compensatory damages and outstanding debt the three class representative allege in the first

3    amended complaint, and then multiply that number by 1,000, the number of persons Plaintiffs

4    allege comprise the class. (*See* Opp. Br. at 6-10.)  Defendants then use this number as a starting

5    point to calculate punitive damages and attorneys' fees, which are also added to the amount in

6    controversy. (*Id*. at 10-13.)  However, such a calculation, which extrapolates from three class

7    representatives to an entire class is unsupported by underlying facts, is speculative, and falls

8    short of meeting the preponderance of the evidence burden. *See Abrego Abrego v. The Dow*

9    *Chemical Co.*, 443 F.3d 676, 689 (9th Cir. 2006); *Roth v. Comerica Bank*, 799 F. Supp. 2d

10   1107, 1128-1130 (C.D. Cal. 2010).  Specifically, extrapolating in this way, Defendants assume

11   that the vast majority of class members received more than one loan.  To support their

12   argument, Defendants cite an article written by an economist at the Federal Reserve Bank of

13   Kansas City. (*See* Opp. Br. at 6-7.)  An article, on its own, is not the sort of evidence that

14   demonstrates an amount in controversy by a preponderance of the evidence.[1] *See Lewis v.*

15   *Verizon Communications, Inc*., 627 F.3d 395, 399-400 (9th Cir. 2010); *Roth*, 799 F. Supp. 2d at

16   1119-1120 (finding that defendant cannot assume any particular frequency as basis for its

17   jurisdictional calculations, but must provide evidence from its own records to support its

18   estimates).  Moreover, "federal jurisdiction must be rejected if there is any doubt as to the right

19   of removal in the first instance." *See Gaus*, 980 F.2d at 566.  For these reasons, the Court finds

20   that Defendants have not met their burden to demonstrate that the amount in controversy

21

22

23        [1] In support of their petition for removal, Defendants also attach a notice of removal
24   and a joint case management statement from another case pending in the Northern District of
     California, to which plaintiff Bernal is a party. (*See* RJN, Exs. A, B.)  Defendants argue that
25   because Bernal did not contest federal jurisdiction in that case, Bernal may not do so here.
     (*See* Opp. Br. at 2 n.2.)  However, the Court finds that documents from another case,
26   premised upon different facts and evidence not before this Court, do not satisfy the
     preponderance of the evidence standard required to show the amount in controversy here.
27   *See Gaus*, 980 F.2d at 567 (holding that a party must set forth the underlying facts supporting
     its assertion that the amount in controversy exceeds the applicable dollar value).

28
                                            5

EXHIBIT 1:  ORDER REMANDING CASE

United States District Court

For the Northern District of California

1  exceeds $5,000,000 by a preponderance of the evidence. Thus, the Court remands this action to

2  the state court.[2]

3  **E.     Plaintiffs' Request for Attorneys' Fees Is Denied.**

4           Pursuant to 28 U.S.C. § 1447(c), Plaintiffs request an award of attorneys' fees and costs

5  incurred as a result of Defendants' allegedly improper removal. "An order remanding the case

6  may require payment of just costs and any actual expenses, including attorney fees, incurred as

7  a result of removal." 28 U.S.C. § 1447(c). To determine whether to award costs and fees under

8  section 1447(c), this Court has a "great deal of discretion." *Morris v. Bridgestone/Firestone,*

9  *Inc.*, 985 F.2d 238, 240 (9th Cir. 1993). Although it was not ultimately persuaded by

10 Defendants' arguments, the Court does not find that removal was frivolous or motivated by bad

11 faith. The Court therefore declines to exercise its discretion to award Plaintiffs' fees and costs

12 under section 1447(c).

13

14

15

16    [2] In their reply, Plaintiffs also argue that their sixth cause of action for violation of
   the UCL does not implicate a substantial federal question, which would independently
17 provide this Court with jurisdiction over the action. Plaintiffs premise their sixth cause of
   action for violation of the UCL on the allegation that the Bank Defendants made withdrawals
18 from Plaintiffs' bank accounts in order to pay the Offshore Lender Defendants, in violation
   of the Electronic Funds Transfer Act ("EFTA"), a federal law. Although the Defendants did
19 not brief the matter in their opposition, this Court independently finds that the Plaintiffs'
   sixth cause of action for violation of the UCL does not create a substantial federal question.
20    "The mere presence of a federal issue in a state cause of action does not automatically
   confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804,
21 813 (1986). Instead, the cause of action must raise a substantial federal question. *Grable &*
   *Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). In
22 *Empire Health Choice Assurance, Inc., v. McVeigh*, the Supreme Court found that a federal
   question could be deemed substantial if it presented a "nearly 'pure issue of law'" and its
23 resolution disposed of the case. 547 U.S. 677, 700-701 (2006). In this case, resolution of the
   federal issue–that is, whether the Bank Defendants violated the EFTA–would require a fact-
24 intensive inquiry as opposed to a determination of a pure matter of law. Accordingly, the
   Court finds that the presence of a federal issue does not confer subject matter jurisdiction.
25 *See also Nevada v. Bank of America Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (finding that
   the use of a federal statute as a predicate for a state law cause of action does not necessarily
26 transform that cause of action into a federal claim); *Hoekstra v. State Farm General Ins. Co.*,
   No. C 12-06328 CRB, slip op. at 1-2 (N.D. Cal. Feb. 12, 2013) (finding removal doubtful
27 where reference to federal law was meant to bolster state-based unfair competition claims).

28

                                                  6

EXHIBIT 1:  ORDER REMANDING CASE

**CONCLUSION**

For the reasons stated herein, the Court GRANTS Plaintiffs' motion to remand this action to the Superior Court for the County of Alameda and DENIES the request for attorneys' fees.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 10, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

7

EXHIBIT 1:  ORDER REMANDING CASE

EXHIBIT 1:  ORDER REMANDING CASE



```
FILED
ALAMEDA COUNTY

JUL 3 0 2013

CLERK OF THE SUPERIOR COURT
By_____
                          Deputy
```

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| PHAM, et al., | No.  RG12-652919 |
| Plaintiffs, | |
| vs. | **ORDER GRANTING MOTIONS TO COMPEL ARBITRATION FILED BY (1) WELLS FARGO BANK AND (2) JPMORGAN CHASE BANK** |
| JPMORGAN CHASE BANK, NA., et al., | |
| Defendants. | |

      On June 28, 2013, the separate motions of defendant Wells Fargo Bank, N.A. ("Wells Fargo") and defendant JPMorgan Chase Bank, N.A. ("Chase") To Compel Arbitration came on for hearing.  Based on the briefing and argument to date, the court rules as follows:

I.     BACKGROUND

      The First Amended Complaint, currently operative, was filed on November 2, 2012 ("Complaint") by plaintiffs Dinah Pham, Paula Bernal and Mary F. Bailey, on behalf of themselves and all persons similarly situated ("Plaintiffs").  Plaintiffs allege in the Complaint

EXHIBIT 2: ORDER COMPELLING ARBITRATION

that they entered into Deferred Deposit Transaction ("DDT") agreements, commonly known as "payday loans," with one of more lenders during the applicable limitations period (defined by Plaintiffs as on or after October 22, 2008) and that these payday loan transactions were in violation of California Financial Code sections ("FC") 23000, et seq. ("DDT Law").

Three groups of defendants are named. The first group includes JPMorgan Chase Bank ("Chase") and Wells Fargo Bank ("Wells Fargo") (collectively, "Banks"), with whom Plaintiffs maintained checking accounts that were used in connection with the subject payday loans. Banks are named in the 3rd cause of action for Aiding and Abetting Violation of the DDT Law, the 4th and 6th causes of action for Violation of the Unfair Competition Law ("UCL"), and the 7th cause of action for Negligence. Wells Fargo answered the Complaint on April 30, 2012 and Chase answered the Complaint on May 2, 2013. The answers of both Banks included affirmative defenses of "agreement to arbitrate."

The second group of defendants includes Effective Marketing Solutions, LLC ("Effective"), Aaron Shoaf ("Shoaf"), Money Mutual, LLC ("Money Mutual" [named in the Complaint as "MONEYMUTUAL"]) and Montel Brian Anthony Williams ("Williams"). Effective and Shoaf successfully moved to quash service for lack of personal jurisdiction and were dismissed from this case on May 31, 2013. Money Mutual and Williams were unsuccessful in their motion to dismiss and answered the Complaint on June 24, 2013. The court notes that Plaintiffs filed DOE amendments on April 26, 2013, substituting Selling Source, LLC, London Bay Capital, LLC and Glenn McKay for Does 1, 2 and 3, respectively, with no indication in which group these defendants belong. Plaintiffs indicate in the Joint Case Management Statement filed on June 25, 2013, however, that these defendants belong in the same group as Money Mutual and Williams (collectively, "Money Mutual Defendants"). The Money Mutual

2

Defendants are named in the 2nd cause of action for Aiding and Abetting Violation of the DDT Law, and the 4th and 5th causes of action for Violations of the UCL.

The third group of defendants includes Cash Yes, Gateway Holdings Group, LLC, Horizon Opportunities Group, LLC, SCS Processing, LLC, Payday Valet, and VIP PDL Services, LLC, collectively defined as "Offshore Lenders." The Offshore Lenders are named in the 1st cause of action for Violation of the DDT Law and the 4th cause of action for Violation of the UCL.

II.     WELLS FARGO MOTION

Wells Fargo asserts that the only named Plaintiff who had an account with Wells Fargo was Mary F. Bailey ("Bailey"), and further that when Bailey opened that account in 2012 she signed a Consumer Account Application, which confirms on its face that she received the applicable account agreement and that she agrees to the terms of the dispute resolution program described in the account agreement, under which disputes will be decided in arbitration and not by jury trial or a trial before a judge. The Account Application and the Consumer Account Agreement containing the detailed "Dispute resolution program: arbitration agreement" were submitted as exhibits A and B to the Declaration of Vira Jo Denney, a Wells Fargo Project Manager. Wells Fargo formally requested of Bailey, through her counsel, that she submit her claims to arbitration, but she refused to do so. (Declaration of Bruce A. Ericson and exhibits thereto.)

Wells Fargo further asserts that the arbitration agreement expressly states that the parties are participating in transactions involving interstate commerce and that the agreement and any resulting arbitration are governed by the Federal Arbitration Act ("FAA"), and that the FAA

3

EXHIBIT 2: ORDER COMPELLING ARBITRATION

requires rigorous enforcement of written arbitration agreements. Alternatively, it is argued that arbitration can and should be compelled under California Code of Civil Procedure ("CCP") section 1281.2.

Wells Fargo also points out that the arbitration agreement expressly precludes arbitration of "any dispute as a representative or member of a class...," the enforceability of which was expressly upheld in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 ("*Concepcion*"). Wells Fargo asks that the court compel Bailey to arbitrate her claims against Wells Fargo, and that all claims against Wells Fargo be stayed pending completion of that arbitration.


III.   OPPOSITION AND ANALYSIS

In opposition, Bailey argues first that she did not agree to arbitrate. She claims in her declaration that she was not given the "applicable account agreement" at the time she signed the onscreen account application and that she only received a "Welcome Kit" that had a printout of her account application and a small booklet entitled "Consumer Account Agreement" as she prepared to leave the bank. In Bailey's view, this Motion is governed by the analysis in *Sparks v. Vista Del Mar Child and Family Services* (2012) 207 Cal.App.4th 1511, 1515-1516 ("*Sparks*"). The court disagrees. As correctly pointed out by Wells Fargo in its reply, the *Sparks* case is readily distinguishable because (a) the acknowledgement of receipt of an employee handbook signed by the *Sparks* plaintiff said nothing at all about arbitration and (b) the handbook itself stated that it did not create a contract. Here, in contrast, the Account Agreement is clearly contractual in nature, and the application makes clear reference to arbitration. That Bailey did not read what she was signing is not a basis for her to challenge enforceability. (See, e.g. *24 Hour Fitness, Inc. v. Sup.Ct.* (1998) 66 Cal.App.4th 1199, 1215 ("*24 Hour Fitness*").)

4

Next, Bailey argues that the arbitration agreement should not be enforced because it is unconscionable. It is said to be procedurally unconscionable because it is a contract of adhesion. Adhesiveness alone, however, does not render a contract unenforceable (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819.) It is also argued to be procedurally unconscionable because the AAA Rules were not attached. Bailey's authority for this proposition, *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406 ("*Harper*"), however, does not stand for the blanket proposition that a complete set of rules must always be included as an attachment to an arbitration agreement. Rather, the issue in *Harper* was that the rules themselves imposed limitations on the consumers' rights that were not otherwise evident. Bailey makes no such argument here. Bailey further claims that it is procedurally unconscionable because "there is at least a minimal element of surprise at play" (Opposition, p. 7:22-23) because the signature block on the account application is on a different page than the arbitration agreement itself. The court concludes that Bailey has failed to establish more than a "minimal" degree of procedural unconscionability.

Bailey argues that the arbitration agreement is also substantively unconscionable. First, the Bank maintains setoff rights, which Bailey likens to the carve-outs for judicial and non-judicial foreclosure and self-help remedies found to be unconscionable in *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 854 ("*Flores*") and the carve-out for repossession of a vehicle in *Trompeter v. Ally Financial, Inc.*, 2012 WL 1980894 (N.D.Cal. June 1, 2012) ("*Trompeter*"). Here, however, the self-help provision is expressly applicable to "you or the Bank," and the arbitration agreement also provides that "you and the Bank" may pursue disputes in small claims court.

Bailey also argues that the costs allocation is substantively unconscionable, based on her counsel's estimation of how long an individual arbitration would take. As Wells Fargo correctly

EXHIBIT 2: ORDER COMPELLING ARBITRATION

points out in its reply, however, Bailey appears to have misread the AAA ruled, which provide only that a consumer pay a $200 fee when the claim is filed. In addition, the recent decision in *American Express Co. v. Italian Colors Restaurant* (2013 133 S.Ct. 2304 further undermines this argument. The court concludes that Bailey has failed to establish substantive unconscionability.

Bailey further argues that the Motion should be denied under CCP section 1281.2(c) because Bailey's case includes claims against third parties who are not subject to any arbitration agreements. Bailey's reliance on *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376 and *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711 for the proposition that California law trumps the FAA in this instance is misplaced. The arbitration agreement itself expressly states that the FAA governs and that state law applies only if the FAA is held "inapplicable, unenforceable or invalid." Accordingly, the FAA's procedural rules apply in this case.

Finally, Bailey argues that if the Motion is otherwise granted, then the claims for public injunctive relief must be severed and litigated in court. For this proposition Bailey relies on *Cruz v. Pacificare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315-316 ("*Cruz*") and *Broughton v. Cigna Healthplans of California* (1999) 21 Cal.4th 1066, 1079-1080 ("*Broughton*"). The parties acknowledge that there is currently a split of California decisional authority as to the continued viability of the *Broughton-Cruz* rule in light of *Concepcion*. (Compare the First District case of *Nelsen v. Legacy Partners Res., Inc.* (2012) 207 Cal.App.4th 1115 ("*Nelson*") with the Fourth District case of *Hoover v. American Income Life Insurance Co.* (2012) 206 Cal.App.4th 1193 ("*Hoover*"). This court follows *Nelson* wherein it was found that "[s]ince *Broughton-Cruz* prohibits outright the arbitration of claims for public injunctive relief, it is in conflict with the FAA." (*Id.*, at 1136.)

6

EXHIBIT 2: ORDER COMPELLING ARBITRATION

IV.   CHASE MOTION

Chase asserts that the only named Plaintiffs who had an account with Chase were Dinah Pham ("Pham") and Paula Bernal ("Bernal").

Pham opened five different deposit accounts with Chase between 2010 and 2013.  On each occasion she signed a signature card in which she acknowledged receipt of the terms and conditions of an Account Agreement and agreed to be bound by those terms and conditions. Bernal opened six different deposit accounts with Chase between 2010 and 2012 and likewise executed a signature card for each in which she acknowledged receipt of the Account Agreement and agreed to be bound by its terms.  It was Chase's policy and procedure to provide uniform terms and conditions upon the opening of every individual deposit account, and to provide the booklet to the customer prior to the execution by the customer of the signature card or application for a new account.

Chase provides copies of the four different arbitration agreements contained in the Account Agreements in effect at the times Pham and Bernal opened their accounts as Exhibits J, K, L and M to the Declaration of Leslie A. Duncan, and asserts that Pham and Bernal received notice each time the applicable arbitration agreements were amended.

Chase asserts that each arbitration agreement expressly states that Federal Arbitration Act ("FAA") applies to any arbitrable claims. There is also no question that the Account Agreements anticipate interstate activity and that the arbitration provisions apply to the claims in this case. Chase argues that under the FAA both Pham and Bernal must arbitrate their claims against Chase, and the result would be no different under California law.

Although not stressed by Chase in its moving papers, each of the arbitration agreements expressly precludes class or representative actions.

7

EXHIBIT 2: ORDER COMPELLING ARBITRATION

Chase asks that the court compel Pham and Bernal to arbitrate their claims against Chase, and that all claims against Chase be stayed pending completion of that arbitration.

## V.     OPPOSITION AND ANALYSIS

In opposition, Pham and Bernal (collectively, "Plaintiffs") argue first that the only arbitration agreement that could possibly apply is the 2008 version that was in effect at the time that the accounts from which the withdrawals underlying their claims in this case were opened in 2010. This argument, however, ignores the fact that each of the later versions includes language extending their applicability to "any prior account agreement between you and the Bank." Plaintiff's reliance on *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 805-806, is also misplaced, since the amendments to the account agreements in this case did not seek to add an arbitration provision where one had not already existed. The court also notes that the question of whether all four arbitration agreements apply is not dispositive in any event, since the 2008 version is not substantially different than the later versions.

Plaintiffs further argue that they did not agree to arbitrate. Both claim in their declarations that they were not given any "Account Rules and Regulations" or "other applicable account agreement" at the time they signed the signature cards, but they admit that it is possible that they were given those materials afterwards. As with the Wells Fargo Motion, Plaintiffs rely on *Sparks*, and the court disagrees for the reasons previously stated in the context of the parallel motion. As correctly pointed out by Chase in its reply, the *Sparks* case is readily distinguishable because the handbook at issue in *Sparks* was "informational rather than contractual." (*Id.*, at 1520.) Here, in contrast, the Account Rules and Regulations and Deposit Account Agreements

8

are clearly contractual in nature. That Plaintiffs did not read what they were signing is not a basis for them to challenge enforceability. (See *24 Hour Fitness, Inc., supra*.)

Next, Plaintiffs argue that the arbitration agreement should not be enforced because it is unconscionable. On procedural unconscionability, Plaintiffs' arguments track those raised in the context of the parallel motion, and the court rejects them for the same reasons as stated in the context of that Motion.

Plaintiffs' raises three substantive unconscionability arguments. First, they claim the provision allowing appeal to a three-member panel is unconscionable because it could cause additional cost and delay. The court disagrees. The appeal provision is clearly applicable to both parties, and the court is not convinced that such a provision unfairly favors Chase. Second, Plaintiffs argue that the costs allocation is substantively unconscionable based on her counsel's estimation of how long an individual arbitration would take. As Chase correctly points out in its reply, however, the AAA rules provide only that a consumer pay a $200 fee when the claim is filed, and Chase expressly states that it "does not intend to take the position that the Account Agreement [which limits Chase to paying for two days of arbitration] applies." (Reply, p. 6, fn.3.) Finally, as with the Wells Fargo Motion, Plaintiffs assert that the Bank maintains setoff rights, which they liken to the carve-outs for judicial and non-judicial foreclosure and self-help remedies found to be unconscionable in *Flores, supra*, and the carve-out for repossession of a vehicle in *Trompeter, supra*. Here, however, the provision to which Plaintiffs refer is not a part of the arbitration provision. The court concludes that they have failed to establish substantive unconscionability.

As with the Wells Fargo Motion, Plaintiffs argue that the Motion should be denied under CCP section 1281.2(c) because Plaintiffs' case includes claims against third parties who are not

9

subject to any arbitration agreements.  Plaintiffs' reliance on *Cronus Investments, supra*, and *Mount Diablo Medical Center, supra*, are rejected for the reasons explained in the context of the other Motion.  Similarly, Plaintiffs' arguments regarding the claims for public injunctive relief are rejected for the same reason as they were in the context of the other motion.  (See *Nelson, supra*, at 1136.)

VI.     RULINGS

The Motions are GRANTED.  Bailey shall submit her claims against Wells Fargo to arbitration, and all claims against Wells Fargo in this case are hereby stayed, pending the completion of that arbitration.  Plaintiffs shall submit their claims against Chase to arbitration, and all claims against Chase in this case are hereby stayed, pending the completion of that arbitration.

Dated: July 30, 2013

Judge Wynne Carvill

10

EXHIBIT 2: ORDER COMPELLING ARBITRATION

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

Case Number: RG12-652919
Case name: Pham, et al., vs. JPMorgan Chase Bank

DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document **ORDER GRANTING MOTIONS TO COMPEL ARBITRATION FILED BY (1) WELLS FARGO BANK AND (2) JPMORGAN CHASE BANK** was mailed first class, postage prepaid, in a sealed envelope, addressed as shown at the bottom of this document, and that the mailing of the foregoing and execution of this certificate occurred at 1221 Oak Street, Oakland, California.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 31, 2013.

Executive Officer/Clerk of the Superior Court
By *Diane Williams*, Deputy Clerk

Donald Putterman
2175 N. California Blvd., Ste. 805
Walnut Creek, CA 94596

Molly Moriarty Lane
One Market, Spear Street Tower
San Francisco, CA 94105

Jeffrey Spencer
903 Calle Amanecer, Ste. 220
San Clemente, CA 92673

Jeffrey Wilens
18340 Yorba Linda Blvd., Ste. 107-610
Yorba Linda, CA 92886

Bruce Ericson
Four Embarcadero center, 22nd Floor
San Francisco, CA 94111

EXHIBIT 2: ORDER COMPELLING ARBITRATION