**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINAH PHAM, PAULA BERNAL, MARY F. BAILEY, on their behalf and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., et al.<br><br>Defendants. | No. C 13-04209 JSW<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the motion to remand filed by Plaintiffs Dinah Pham, Paula Bernal, and Mary F. Bailey (collectively "Plaintiffs"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS Plaintiffs' motion but DENIES their request for attorneys' fees.

**BACKGROUND**

This case is related to and is a continuation of *Pham, et al. v. JPMorgan Chase, et al.*, 12-CV-6579 ("*Pham I*"),[1] in which Plaintiffs sued, *inter alia*, JPMorgan Chase Bank and Wells Fargo Bank ("Bank Defendants"), Money Mutual, Effective Marketing Solutions, Aaron Shoaf, Montel Williams ("Money Mutual Defendants"), Cash Yes, Gateway Holdings Group, LLC, Horizon Opportunities Group, SCS Processing, LLC, Payday Valet, and VIP PDL Services,

---

[1] Plaintiffs filed *Pham I* on October 22, 2012 in the Superior Court of the State of California for Alameda County ("Alameda County Superior Court").

LLC ("Offshore Lender Defendants"). On November 7, 2012, Plaintiffs filed a First Amended Complaint ("FAC") in Alameda County Superior Court. (*See* Docket No. 1, Notice of Removal (hereinafter "Second Notice of Removal"), Ex. A, First Amended Complaint ("FAC") ¶¶ 1-17.)

Plaintiffs allege that the Offshore Lender Defendants, based primarily in the Caribbean or Central America, and unlicensed by the state of California, entered into illegal deferred deposit transactions (colloquially "payday loans") with the Plaintiffs. (FAC ¶¶ 19, 34-38.) Plaintiffs also allege that Money Mutual, a payday lender referral service, brokered some of these loans. (*Id*. ¶¶ 59-78.) According to Plaintiffs, the Bank Defendants withdrew money from the Plaintiffs' checking accounts and electronically transmitted it to bank accounts belonging to the Offshore Lender Defendants. (*Id*. ¶¶ 83-89.)

Based on these allegations, Plaintiffs brought claims for violations of the California Deferred Deposit Transaction Law ("CDDTL"), aiding and abetting violations of the CDDTL, violations of California's Unfair Competition Law ("UCL"), and negligence. (*Id*. ¶¶ 24-133.) Plaintiffs sought relief in the form of compensatory damages, cancellation of unpaid debt, punitive damages, attorney fees, a declaratory judgment, and injunctive relief. (*Id.*, Prayer for Relief ¶¶ 1-13.)

On December 31, 2012, Money Mutual filed a notice of removal pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453. (*Pham I*, Docket No. 1, Notice of Removal ¶¶ 4-12.) The Bank Defendants subsequently joined in Money Mutual's removal. (*Pham I*, Docket Nos. 21, 23.) Money Mutual and the Bank Defendants argued that the Court had jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), which grants federal district courts original jurisdiction over certain class action suits. (*Pham I*, Notice of Removal ¶ 4.) The Court concluded Defendants did not meet their burden to show that the amount in controversy exceeded $5,000,000 and granted Plaintiffs' motion to remand. (*Pham I*, Docket No. 48.)

The parties continued to litigate this matter in state court, and on July 15 2013, Plaintiffs amended their complaint to substitute PartnerWeekly, LLC ("PartnerWeekly") and TSS Acquisition Company LLC ("TSS") for Doe defendants. (Notice of Removal, Exs. C and D.) On July 30, 2013, the state court granted the Bank Defendants' motions to compel arbitration,

2

ordered those parties to arbitration, and it stayed all claims against the Bank Defendants pending arbitration. (Docket No. 28, Rare Moon Media LLC Opp. Br., Ex. A.) On August 9, 2013, Plaintiffs amended their complaint to substitute Rare Moon Media LLC ("Rare Moon")for a Doe defendant. (Docket No. 12-1, Rare Moon Joinder and Consent, Ex. A at ECF pages 30-31.)          On August 30, 2013, this Court issued an Order in *Gilbert v. Bank of America, N.A.*, 13-CV-1171, which involves allegations substantially similar to the allegations in this case and involves many of the same defendants. The Court denied the *Gilbert* plaintiff's motion to remand and found that the Court had jurisdiction under the Edge Act, 12 U.S.C. section 632 ("*Gilbert* Order").

On September 11, 2013, PartnerWeekly and TSS filed a notice of removal, in which they assert the Court has jurisdiction under the Edge Act. On September 27, 2013, Rare Moon filed a joinder in and consent to the notice of removal filed by Partnerweekly and TSS. Rare Moon also asserts that the Court has jurisdiction under CAFA.

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.     Legal Standards Relevant to Removal Jurisdiction.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is construed strictly against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. In order to determine whether the removing party has met its burden, a court may consider the contents of the

removal petition and "summary-judgment-type evidence." *Valdez*, 372 F.3d at 1117. It is well established that a court must evaluate whether it has jurisdiction based on the circumstances that exist at the time the notice of removal is filed. *See, e.g., Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998).

**B.      The Edge Act.**

The Edge Act provides, in relevant part, that:

> all suits of a civil nature ... to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking ... or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions ... in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632.

Courts have set forth a three prong test to determine whether jurisdiction exists under the Edge Act. First, is the suit is civil in nature? Second, does the suit involve a corporation organized under the laws of the United States ("an Edge Act corporation")? Third, does the suit arise out of transactions involving international or foreign banking or other international financial operations? *See Retailers National Bank v. Harding*, 2006 WL 6181282, at *2 (N.D. Cal. June 30, 2006) (citing cases); *see also American International Group, Inc. v. Bank of America Corporation*, 712 F.3d 775, 784 (2nd Cir. 2013) (holding that to satisfy third prong "the suit must arise out of an offshore banking or financial transaction of th[e] federally chartered corporation" that is a party to the dispute).

**C.      The Court Grants Plaintiffs' Motion to Remand.**

      **1.      Defendants Have Not Met Their Burden to Show Jurisdiction Under the Edge Act.**

4

The parties do not dispute that the first and third prongs of the test described above are satisfied. Indeed, for the reasons set forth in the *Gilbert* Order, the Court would independently conclude that the allegations in Plaintiffs' complaint satisfy the third prong. (*See* Notice of Removal, Ex. E (*Gilbert* Order at 4:12-8:8).) Plaintiffs also do not dispute that the Bank Defendants are corporations organized under the laws of the United States. However, they argue that the Bank Defendants are not parties to the suit for purposes of Edge Act jurisdiction.

Plaintiffs' argument that the Bank Defendants are not "parties" is premised on the fact that the state court granted the Bank Defendants' motion to compel arbitration before TSS and PartnerWeekly filed their notice of removal. In general, when courts have analyzed whether the second prong is met, they have focused on whether or not the Edge Act corporation is potentially liable to the plaintiff on the claims arising out of foreign or international banking transactions. For example, Plaintiffs rely on *Bata v. Central-Penn Nat'l Bank of Philadelphia*, 223 F. Supp. 91 (E.D. Pa. 1963). In that case, the court found that it did not have jurisdiction under the Edge Act, because the plaintiff sued the bank in its capacity as an escrow agent. Thus, the bank had no interest in the outcome of the lawsuit. *Id.* at 93-94.

Courts considering this issue subsequent to *Bata* have reached similar conclusions. *Compare Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 792-93 (2d Cir. 1980) (concluding that bank, who had been dismissed after case was filed, was not mere stakeholder and was potentially liable to plaintiff for damages and finding jurisdiction under the Edge Act); *National Financiera, S.N.C. v. Chase Manhattan Bank., N.A.*, 2001 WL327159, at *4 (S.D.N.Y. April 4, 2001) (concluding that court had jurisdiction under Edge Act where, *inter alia*, national bank exposed to liability based on foreign banking transaction); *with Allstate Ins. Co. v. Citmortgage, Inc.*, 2012 WL 967582 (S.D.N.Y. Mar. 23, 2012) (holding that "nationally chartered bank must have potential liability on claims arising out of transactions involving international or foreign banking" and finding facts alleged could not support Edge Act jurisdiction); *Societe d'Assurance de L'Est SPRL v. Citigroup, Inc.*, 2011 WL 4056306, at

5

*4-*5 (S.D.N.Y. Sept. 13, 2011) (holding that court did not have jurisdiction under the Edge Act where plaintiffs failed to allege facts showing that bank would be liable).

Plaintiffs' allegations demonstrate that the Bank Defendants are not mere stakeholders and, based on the Court's reasoning in *Gilbert*, their potential liability arises out of transactions involving international or foreign banking.  (*See, e.g., Gilbert* Order at 7:23-8:8.) PartnerWeekly, TSS and Rare Moon (collectively "Defendants') argue that these allegations show that the Bank Defendants are parties for purposes of Edge Act jurisdiction, and they urge the Court confine its inquiry to the *allegations* in the FAC at the time of removal rather than on the status of the parties.  The Court is not persuaded.

The Bank Defendants have not been dismissed.  However, if the state court had dismissed, rather than stayed, the claims against the Bank Defendants, it is clear that the Court would not have jurisdiction under the Edge Act.  At the time the case was removed, it also was clear that this Court would not adjudicate the claims against the Bank Defendants in light of the pending arbitration.  Thus, any interest the Bank Defendants may have in the claims is not an interest that will be resolved in this Court.[2]  To the extent the Court retains jurisdiction over the Bank Defendants while the arbitration is pending, that jurisdiction would be limited to considering matters in aid of arbitration, rather than the merits of this dispute.  *See, e.g., PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*, 863 F.2d 639, 642 (9th Cir. 1988).  Similarly, to the extent the parties return to the Court to seek review of an arbitration award, this Court's review of such an award is limited.  *See* 9 U.S.C. § 10; *Lagstein v. Certain Underwriters At Lloyd's London*, 607 F.3d 640-41 (9th Cir. 2010).

As the Second Circuit has noted, the "apparent purpose of [section] 632 was to give Edge Act banks predictable uniformity of adjudication supervised in the federal courts, and thus better protection against potentially divergent and conflicting strictures imposed by banking

---

[2] The procedural posture of this case also distinguishes it from *Coporacion Venezolana*, where the plaintiff initially filed suit in federal court, and the Edge Act corporation was dismissed after the case had been filed.  629 F.2d at 793.

6

authorities of 48 states." *American International Group*, 712 F.3d at 779; *see also* 12 U.S.C. § 611a.  Those purposes would not be served in this case, where the Bank Defendants voluntarily chose to pursue their right to arbitrate the dispute, rather than resolve the dispute in the judicial forum.

There is a split in authority on whether a court should construe the Edge Act broadly or narrowly in the context of remand.  Some courts have concluded that the issue of remand should be approached with caution, "'lest [a court] erroneously deprive [a] defendant of the right to a federal forum.'"  *Jana Master Fund, Ltd. v. JP Morgan Chase & Co.*, 490 F. Supp. 2d 325, 329 (S.D.N.Y. 2007) (quoting *Stamm v. Barclays Bank of New York*, 1996 WL 614087, at *1 (S.D.N.Y. Oct. 24, 1996) and omitting internal quotations and citations)); *see also Sealink Funding Limited v. Bear Stearns & Co., Inc.*, 2012 WL 4794450, at *5 (S.D.N.Y. Oct. 9, 2012) (noting split in authority about whether to construe the Edge Act broadly or narrowly and citing cases).  At the same time, some courts have applied the general principle that courts are required to construe removal statutes strictly and resolve any doubts in favor of remand.  *See, e.g., Retailers National*, 2006 WL 6181282, at *2, *4.

Mindful of these competing views, and based on the circumstances in this case, the Court concludes that the Defendants have not met their burden to show that the Bank Defendants are parties for purposes of Edge Act jurisdiction.

**2.  Rare Moon Has Not Met Its Burden to Show the Court Has Jurisdiction Under CAFA.**

Although the Court concludes that it does not have jurisdiction under the Edge Act, Rare Moon also asserts that the Court has jurisdiction under CAFA.  CAFA provides that district courts have original jurisdiction over any class action in which (1) the amount in controversy exceeds $5,000,000, (2) any plaintiff class member is a citizen of a state different from any defendant, (3) the primary defendants are not states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief, and (4) the number of plaintiffs in the class is at least 100.  28 U.S.C. §§ 1332(d)(2), (d)(5).  Plaintiffs did not allege

7

1  damages in a specific amount in the FAC and, thus, Rare Moon bears the burden to prove by a
2  preponderance of the evidence that the amount in controversy exceeds $5,000,000.
3  *Guglielmino v. McKee Foods, Inc.,* 506 F.3d 696, 699 (9th Cir. 2007).

4  Rare Moon relies on the same methodology to calculate compensatory damages that the
5  Court rejected when it granted Plaintiffs' first motion to remand. Rare Moon argues that the
6  Court can, and should, revisit that ruling, because it uses a more conservative estimate for the
7  amount of the payday loans received by absent class members. (*See* Rare Moon Opp. Br. at
8  17:3-28.) Rare Moon's calculations still are speculative and not supported by the underlying
9  facts, and the Court finds no basis to revisit its prior ruling on that point.

10  Rare Moon also argues that the amount of punitive damages that could be awarded
11  would exceed CAFA's jurisdictional minimum. To support this argument, Rare Moon relies on
12  the Bank Defendants' net worth. (Rare Moon Joinder and Consent ¶ 16.) However, as
13  discussed above, at the time the case was removed, the Bank Defendants were in arbitration and
14  the merits of the claims against them are to be resolved in arbitration. Thus, their net worth is
15  irrelevant. Rare Moon offers no other evidence that the amount of punitive damages could
16  exceed CAFA's jurisdictional minimum.

17  Accordingly, Rare Moon has failed to meet its burden to show that this Court has
18  jurisdiction under CAFA.

19  **D.    Plaintiffs' Request for Attorneys' Fees Is Denied.**

20  Plaintiffs request an award of attorneys' fees and costs incurred as a result of
21  Defendants' allegedly improper removal. "An order remanding the case may require payment
22  of just costs and any actual expenses, including attorney fees, incurred as a result of removal."
23  28 U.S.C. § 1447(c). To determine whether to award costs and fees under Section 1447(c), this
24  Court has a "great deal of discretion." *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240
25  (9th Cir. 1993). Although it was not ultimately persuaded by Defendants' arguments, the Court
26  does not find that removal was frivolous or motivated by bad faith. The Court therefore
27  declines to exercise its discretion to award Plaintiffs' fees and costs under Section 1447(c).
28

**CONCLUSION**

For the reasons stated herein, the Court GRANTS Plaintiffs' motion to remand this action to the Alameda County Superior Court and DENIES the request for attorneys' fees. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January 21, 2014



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9